UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMEGA RV,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE RV FACTORY, LLC, a limited liability company; and CLAUDE DONATI, an individual,<br><br>　　　　　Defendants. | Case No. 1:16-CV-00204-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Pending before the Court is Defendants The RV Factory, LLC and Claude Donati's Motion to Dismiss. (Dkt. 15.) The parties filed responsive briefing and the motion is now ripe. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument. The Court denies Defendants' Motion to Dismiss and grants Defendants' Motion to Transfer.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Omega RV, LLC, ("Omega") is an Idaho limited liability company with its principal place of business in Idaho. (Dkt. 7.) Omega manufactures and sells RVs on a statewide and national level. (Dkt. 18.) Defendant The RV Factory, LLC ("The RV Factory") is an Indiana limited liability company with its principal place of business in Indiana. (Dkt. 15.) The RV Factory manufactures its RVs at its production facility in Wakarusa, Indiana where it also has a showroom where its RVs are displayed and available for sale. (Dkt. 15.) Defendant Claude Donati ("Donati") is an individual and resident of Indiana and owner of the RV Factory. (Dkt. 15.) The parties both sell RVs and toy hauler trailers bearing the "Weekend Warrior" mark and dispute who has the right to use the mark. (Dkt. 15, 18.)

The Complaint alleges that the "Weekend Warrior" name has been used by Mark Warmoth ("Warmoth") who has sold RVs bearing the mark since 1988. (Dkt. 18.) Warmoth has sold approximately 30,000 RVs under the "Weekend Warrior" name from 1988 to 2008. (Dkt. 18.) In 2010, Warmoth partnered with another individual, Don Day, to form Extreme Warrior RV, LLC, which in 2011, began constructing, marketing, and selling its line of "Weekend Warrior" trailers. (Dkt. 7.) In 2012, Extreme Warrior, LLC encountered financial difficulties and sought funding from others in the RV industry, including from Defendants. (Dkt. 7, 18.) Defendants rejected the funding requests and

---

[1] The Court finds the following facts material and undisputed, or, when disputed, taken in the light most favorable to the non-moving party.

instead, on April 16, 2013, Donati filed a trademark application for the "Weekend Warrior" mark. (Dkt. 7, 18.)[2] Defendants began using the "Weekend Warrior" mark on its RVs and trailers in 2013. (Dkt. 7.) Warmoth ultimately assigned the "Weekend Warrior" mark to Omega, who then began constructing, manufacturing, and selling RVs bearing the "Weekend Warrior" mark. (Dkt. 18.) On May 4, 2016, Defendants sent a cease and desis letter to Omega demanding that it stop using the "Weekend Warrior" mark on its RVs. (Dkt. 7, Ex. A.)

In response, Omega filed suit against Defendants seeking a declaratory judgment invalidating Defendants' trademark, alleging trademark infringement, unfair competition, and tortious interference with a contract. (Dkt. 7.)[3] Omega claims it has the right to use the mark because it was assigned the mark from Warmoth. The RV Factory counters that it owns the trademark to the "Weekend Warrior" mark since approximately 2013, and, therefore, has the right to use the mark on its RVs. Omega maintains that Warmoth's rights to the "Weekend Warrior" trademark have priority over Defendants' rights because Warmoth used the trademark in commercial business for 25 years before Donati applied for the trademark.

---

[2] Donati filed for the "Weekend Warrior" trademark on April 16, 2013. (Dkt. 19, Ex. D.)

[3] In its Amended Complaint, Omega claims that Mr. Warmoth's rights to the "Weekend Warrior" trademark have priority over Defendants' rights because Mr. Warmoth used the trademark in commercial business for 25 years before Defendants applied for the trademark. Omega appears to argue it was assigned Mr. Warmoth's rights to use the mark via Extreme Warrior becoming Omega and, therefore, it also has priority rights over Defendants. (Dkt. 7, 18.)

MEMORANDUM DECISION AND ORDER - 3

Defendants filed a Motion to Dismiss under Rule 12(b)(2) and 12(b)(3). (Dkt. 15.) Omega filed its Response and Defendants filed their Reply. (Dkt. 18, 23.) The Court now takes up Defendants' Motion to Dismiss.

**STANDARD OF LAW**

Motions to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) "are speaking motions and it is appropriate to look beyond the pleadings to affidavits and other evidence when considering them." *National Union Fire Ins. Co. of Pittsburgh v. Aerohawk Aviation, Inc.,* 259 F. Supp.2d 1096, 1101 (D. Idaho 2003) (citing *Data Disc Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977)). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Where "the [defendant's] motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* The Court looks to the pleadings and affidavits to determine whether the plaintiff has made a prima facie showing of personal jurisdiction. *Id*. "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (quoting *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977)). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

MEMORANDUM DECISION AND ORDER - 4

## ANALYSIS

**1. Personal Jurisdiction**

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of that state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (citing Fed. R. Civ. P. 4(k)(1)(A)). "In order for an Idaho court to exert jurisdiction over an out-of-state defendant, two criteria must be met; the act giving rise to the cause of action must fall within the scope of our long-arm statute and the constitutional standards of due process must be met." *Saint Alphonsus Regional Medical Center v. State of Wash.*, 852 P.2d 491, 494 (Idaho 1992). Idaho Code § 5-514 confers personal jurisdiction over any "cause of action arising from . . . [t]he commission of a tortious act within [Idaho]." *See* Idaho Code § 5-514(b). Under this standard, the negligent act need not take place in Idaho; all that is required is that the injury is alleged to have occurred in Idaho. *National Union Fire Ins. Co.*, 259 F. Supp.2d at 1102.

Omega claims it is rightfully using the "Weekend Warrior" trademark and its business is suffering as a result of Defendants' infringement because it confuses Idaho consumers who are targeted via Defendants' website. Under the long arm statute, the alleged injury to Omega is occurring in Idaho.

"Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need

look only to the Due Process Clause to determine personal jurisdiction." Thus, under Idaho law, the jurisdictional and federal due process analyses are the same." *Id.*[4]

Due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotations and citation omitted). "[T]he constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established minimum contacts in the forum State." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.,* 480 U.S. 102, 108-109 (1987) (internal quotations and citations omitted). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Id.* at 109 (internal quotations and citations omitted) (emphasis in original).

Personal jurisdiction can be general or specific. *Lake v. Lake,* 817 F.2d 1416, 1420 (9th Cir. 1987). A court may assert general personal jurisdiction over foreign corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*,

---

[4] See *Smalley v. Kaiser*, 950 P.2d 1248 (1997); *Saint Alphonsus v. State of Washington*, 852 P.2d 491 (1993). Implied by two decisions of the Idaho Supreme Court is the Idaho long arm statute "reaches beyond the limits of due process, and that the Idaho Supreme Court must use the Due Process Clause to rein in the statute's grasp." *Wells Cargo, Inc. v. Transport Ins. Co.*, 676 F. Supp.2d 1114, 1119 n.2 (D. Idaho 2009). The Idaho Supreme Court has instituted a two-part test for resolving long-arm jurisdiction questions. The test recognizes that the reach of the Idaho long arm statute is not the same as the reach of the Due Process Clause; however, the results are the same because the Due Process Clause sets the limit. *Id.*

564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co.*, 326 U.S. at 317). In contrast, specific personal jurisdiction is exercised when a state asserts personal jurisdiction over a defendant in a lawsuit arising out of or related to the defendant's contacts with the forum state. *Helicoptores Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action. *Lake*, 817 F.2d at 1421.

Omega seems to concede the Court does not have general jurisdiction over the Defendants. Instead, Omega contends the Court has specific jurisdiction over the Defendants because Omega was harmed by the conduct that Defendants purposefully directed towards Idaho. Therefore, the Court will only address specific jurisdiction.

### 2. Specific Personal Jurisdiction over Defendants

Specific jurisdiction may be exercised over a nonresident defendant when the cause of action arises out of its contact with, or activities in, the forum state. *SRE-Cheaptrips, Inc. v. Media Synergy Group, LLC*, 2010 WL 1913589, at *3 (D. Idaho May, 2010) (citing *Resnick v. Rowe,* 283 F.Supp.2d 1128, 1135 (D. Hawaii 2003)). The Ninth Circuit has established a three-part test to determine whether a court may exercise specific personal jurisdiction over a nonresident defendant:

> (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Lake*, 817 F.2d at 1421; *see also Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995). Omega bears the burden of satisfying the first two factors. If Omega meets its burden, the burden then shifts to Defendants to demonstrate unreasonableness. *Lake*, 817 F.2d at 1421; *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

Omega asserts six claims against Defendants in its Amended Complaint: unenforceability of a trademark, non-infringement of trademarks, unfair competition and false designation of origin under the Lanham Act, common law trademark infringement, unfair competition under the Idaho Code, and tortious interference with prospective economic advantage. Omega's claims sound in tort, therefore the Court will apply purposeful direction.

### A. *Purposeful Direction*

As this Court noted in *Vandersloot v. BMW Properties, LLC*, 2013 WL 1867352, at *3 (D. Idaho May 1, 2013) and *Wayne Enterprises, LLC v. McGhee*, 2016 WL 3620731, at *4 (D. Idaho June 28, 2016), the first requirement of "purposeful availment" or "purposeful direction" ensures that a defendant is not haled into court because of random, fortuitous, or attenuated contacts or on account of the unilateral activity of third parties. While courts have used purposeful availment and purposeful direction interchangeably, the Ninth Circuit applies purposeful availment to suits involving contracts and negligent torts and purposeful direction to suits involving intentional torts. *See Yahoo! Inc*, 433 F.3d at 1206; *see also Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) "A showing that a defendant purposefully directed his conduct toward

a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger,* 374 F.3d at 803.

The Ninth Circuit evaluates purposeful direction under the three-part *Calder* "effects" test, which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1101, 1111 (9th Cir. 2002)); *see also Calder v. Jones*, 465 U.S. 783 (1984).

The Ninth Circuit "construe[s] intent . . . as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806.

The second part of the *Calder* "effects" test requires the Defendants conduct be expressly aimed at the forum state. The Ninth Circuit "has emphasized that 'something more than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction, and that 'something more' means conduct expressly aimed at the forum." *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1129 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 805) (internal citation omitted); *see also Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1156 (9th Cir. 2006)

The final element requires that the Defendants acts caused harm that they knew was likely to be suffered in the forum state. The "brunt" of the harm does not need to be suffered in the forum state. Instead, "[t]his element is satisfied when defendant's intentional act has

'foreseeable effects' in the forum." *Brayton Purcell LLP*, 606 F.3d at 1131 (citing *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).

Omega argues the following acts satisfy purposeful direction: (1) Defendants sent a cease and desist letter to Omega; (2) Defendants have an interactive website where consumers can select the RV they wish to purchase, personalize it, and apply for financing; (3) Defendants' website lists a Certified Factory Service Center located in Idaho; (4) Defendants use the "Weekend Warrior" trademark on the RV Factory website; and (5) Defendants contacted at least one other RV dealer and demanded that dealer stop selling Omega's Weekend Warrior trailers or it would face liability for infringing on Defendants' alleged trademark. (Dkt. 7, 18.) Omega asserts this Court has personal jurisdiction over Donati for the same reasons as the RV Factory because Donati is the trademark holder and the RV Factory's corporate officer who directed the RV Factory's infringing activity. (Dkt. 18.)

Defendants contend the cease and desist letter is not enough as a matter of law to establish personal jurisdiction, they have not targeted Idaho through its use and operation of its website, the listing of the service center is not interactive as alleged, and its website it not commercial in that consumers cannot make purchases through the site. (Dkt. 15, 23.) Even if the Court has jurisdiction over the RV Factory, Defendants argue the Court does not have jurisdiction over Donati because he has not purposefully directed any activity to Idaho in his personal capacity. (Dkt. 15.)

"It is beyond dispute in this circuit that maintenance of a passive website alone cannot satisfy the express aiming prong." *Brayton Purcell LLC*, 606 F.3d at 1129 (citing

MEMORANDUM DECISION AND ORDER - 10

*Holland*, 485 F.3d at 460.) When evaluating Internet activity, the common thread is that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (citation omitted). Generally, something more than an Internet advertisement is required to show a defendant purposefully directed activity to the forum state. *Id.* at 418.

"A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo! Inc.,* 433 F.3d at 1208 (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998)); *see also, PokitDok, Inc. v. Martin,* 2012 WL 5425615, at *4 (N.D. Cal. Nov. 6, 2012); *Kransco Mfg., Inc. v. Markwitz,* 656 F.2d 1376 (9th Cir. 1981). "This is not to say that a cease and desist letter can never be the basis for personal jurisdiction" but the Ninth Circuit has required more than a "normal" letter. *Id.* For a cease and desist letter alone to create personal jurisdiction over a non-resident defendant, it must be sufficiently "abusive, tortious, or otherwise wrongful." *Id.*

Interpreting the facts in favor of Omega, as the Court must do on the current Motion, the above acts were intentional. However, Omega fails to show purposeful direction because none of the acts meet the second and third prongs of the *Calder* "effects" test.

The RV Factory website is not expressly aimed at Idaho. The RV Factory website is not equipped to make sales or process payments. While Defendants listed a service center located in Idaho on their website, it was one of at least 75 service centers listed nationwide

and no communications or payments were ever exchanged.[5] This listing was not "aimed" at Idaho. The RV Factory website does not rise to the level of "something more" to show purposeful direction at Idaho. Further, Omega offers no evidence that Defendants have sold a single RV in Idaho or to an Idaho resident.

Defendants contact with another RV dealer, SST Auto RV, via an email to inform it that Defendants believed it was infringing upon Defendants' alleged trademark by selling Omega's "Weekend Warrior" trailers was not an act aimed at Idaho. Omega provides no evidence, nor does it make any allegation in its Amended Complaint or responsive briefing that SST Auto RV is located in Idaho.

The cease and desist letter is the only remaining act that could establish personal jurisdiction and the Court finds it does not. The letter contained Defendants' belief that Omega was infringing upon its registered trademark of "Weekend Warrior" in violation of federal and state law. It also demands that Omega: cease use of "any and all marks or names containing WEEKEND WARRIOR or marks confusingly similar thereto"; "[w]ithdraw from the market all materials, advertisements, and publicity containing WEEKEND WARRIOR"; "deliver to Mr. Donati all brochures and print advertisements containing WEEKEND WARRIOR, or confirm their destruction in writing" within 15 days of the letter; "[d]isclose within fifteen (15) calendar days from the date of this letter the gross

---

[5] The Court does not solely rely on Defendants' Motion for such factual assertion, but relies on Amy Hennig's affidavit attached as Exhibit B. (Dkt. 19.) The Court can consider affidavits on a Motion to Dismiss under 12(b)(2), s*ee National Union Fire Ins. Co. of Pittsburgh v. Aerohawk Aviation, Inc.,* 259 F. Supp.2d 1096, 1101 (D. Idaho 2003) (citing *Data Disc Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977)).

revenues generated from the sale of goods promoted using WEEKEND WARRIOR"; and "[a]gree to transfer to Mr. Donati the domain name weekendwarriorrv.com." (Dkt. 7, Ex. A.)

Without more, the Court finds the letter insufficient to show Defendants purposefully directed activity to Idaho. The letter was nothing more than a "normal" cease and desist letter; it was not abusive, tortious, or otherwise wrongful.[6]

### B. Claims Arising Out of Forum Activity

"With regard to the second prong of the test for specific personal jurisdiction, the Ninth Circuit has adopted a 'but for' test for determining whether a plaintiff's cause of action arises out of the defendant's forum-related activities." *Revolution Distribution v. Evol Nutrition Associates, Inc.,* 2012 WL 2368634, at * 5 (D. Ariz. June 21, 2012).

Defendants sending the cease and desist letter is the only act that could be considered "forum activity" since Defendants sent the letter to Omega in Idaho. Even if the cease and desist letter passed the *Calder* "effects" test, it would fail on this prong because the letter is not the "but for" cause of Omega's claims.

"[L]etters threatening litigation are unrelated to the subject matter of the actual controversy, which is whether the declaratory judgment defendant has intellectual property rights that have been infringed by the declaratory judgment plaintiff." *Douglas Furniture*

---

[6] *See Yahoo! Inc.,* 433 F.3d at 1209 (a letter simply alerting Yahoo! to its view of French law and stating its intent to file suit to enforce that law was a "normal" letter and not abusive, tortious, or otherwise wrongful.) *See also, Fehr v. LeFave*, 2008 WL 477879, at *2 (D. Ariz. Feb. 19, 2008) (a letter warning Plaintiffs of believed breach and a demand to cease breaching activity was a "normal" letter.)

*Co. of California, Inc. v. Wood Dimensions, Inc.,* 963 F. Supp. 899, 902 (C.D. Cal. 1997) (citing *Stairmaster Sport/Medical Products, Inc. v. Pacific Fitness Corp.*, 916 F. Supp. 1049, 1056 (W.D. Wash. 1994)). The only way Omega's claims can be said to "arise out of" the cease and desist letter is that the letter motivated Omega to bring suit nine days after its receipt of the letter. (Dkt. 7, Ex. A.)

The Court finds the cease and desist letter is not sufficient to meet the requirements of the second prong of the personal jurisdiction test. Omega's cause of action does not arise out of Defendants' letter or any other forum related activity by Defendants.

Omega has not made a prima facie showing that this Court has personal jurisdiction over Defendants.[7]

### C. Reasonableness

Omega failed to meet its burden on the first two prongs of the personal jurisdiction test, therefore the burden does not shift to Defendants to show unreasonableness.

However, even if the Court found there were sufficient minimum contacts for the Court to exercise jurisdiction over Defendants, the Court finds such exercise would be unreasonable. The Court evaluates "seven factors to determine the reasonableness of a forum's exercise of jurisdiction: (1) the burden on the defendant, (2) existence of an alternative forum, (3) convenient and effective relief for the plaintiff, (4) the forum state's

---

[7] The Court acknowledges that Omega brought suit against the RV Factory and Donati. While there are separate arguments proffered in support and against personal jurisdiction over Donati, the Court finds its treatment of personal jurisdiction applies to both Defendants. The above conduct discussed for purposeful direction was conduct that even if directed by Donati would still fail the personal jurisdiction prongs.

interest in adjudicating the suit, (5) efficient resolution of the controversy, (6) purposeful interjection, and (7) conflicts with sovereignty." *Lake*, 817 F.2d at 1421-22.

The Court finds the burden is a neutral factor, it would be more burdensome on the Defendants in Idaho and more burdensome on Omega in Indiana. However, the Court finds exercising jurisdiction over Defendants would be unreasonable because Defendants have never been to Idaho, have never sold an RV in Idaho or to an Idaho resident, have no contacts with Idaho, and an alternative forum, the Northern District of Indiana, exists to resolve the existing controversy.

### 3. Transfer Venue

#### A. *Motion to Dismiss under Rule 12(b)(3)*

A complaint may be dismissed for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Venue is proper in a judicial district in which: (1) any defendant resides, if all defendants are residents of the State in which the district is located; (2) a substantial part of property that is the subject of the action is situated; or (3) an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the courts personal jurisdiction with respect to such action. 28 U.S.C. § 1391.

If venue is improper, a district court has discretion to either dismiss the action pursuant to Rule 12(b)(3) or, in the interests of justice, to transfer the action to a district in which it could have been brought pursuant to 28 U.S.C. § 1404(a). Defendants do not reside in Idaho and the Court has already determined the Defendants are not subject to personal

jurisdiction in Idaho, so the Court must find "a substantial part of the events" occurred in Idaho in order for Omega to survive a 12(b)(3) challenge.

"It is not necessary for the plaintiff to show that a majority of the events giving rise to the action occurred in Idaho, but only that a substantial part of the events took place [t]here." *Meth Lab Cleanup LLC v. Spaulding Decon*, LLC, 2010 WL 5572397 * 9 (D. Idaho Oct. 25, 2010) (citing *Masterson v. Swan Range Log Homes, LLC*, 2007 WL 625387 *2 (D. Idaho Feb. 23, 2007) (citing *Pasulka v. Sykes*, 131 F.Supp.2d 988, 994 (N.D. Ill. 2001). Defendants argue none of the events, let alone a substantial part of the events, giving rise to Omega's claim took place in Idaho. The Court agrees.

Defendants posted the "Weekend Warrior" trademark on its website and listed a service center located in Idaho on that site, both of those actions occurred in Indiana. Defendants allegedly contacted an RV dealer to dissuade it from selling Omega's Weekend Warrior trailers, but the record does not reflect where the dealer was located. The fact that Defendants sent a cease and desist letter to Omega also does not establish a "substantial part of the events" giving rise to Omega's claims took place in Idaho. For these reasons, the Court does not finds that a substantial part of the alleged infringing acts took place in Idaho.

### B. Motion to Transfer under 28 U.S.C. § 1631

In lieu of dismissal, Defendants move to transfer this case to the Northern District of Indiana pursuant to 28 U.S.C. § 1631. (Dkt. 15.)

If jurisdiction is lacking, under § 1631 a district court must transfer a civil action if "(1) the court to which the action is to be transferred would have had jurisdiction 'at the

MEMORANDUM DECISION AND ORDER - 16

time the [action] was filed,' and (2) 'it is in the interest of justice' to transfer." *Munns v. Kerry*, 782 F.3d 402, 414 (9th Cir. 2015) (citing 28 U.S.C. § 1631).

Having determined this Court lacks jurisdiction over Defendants, it must determine if Defendants satisfy the above two requirements. The Court finds they do.

This matter could have been brought in the Northern District of Indiana pursuant to 28 U.S.C. § 1391(b) because the RV Factory is an Indiana corporation with its principal place of business in Indiana and Donati resides in Indiana. Defendants have requested the matter be transferred, acknowledging a live controversy in fact does exist between the parties that must be resolved in a court of law. The Court, in the interest of justice, recommends this case be transferred to the United States District Court for the Northern District of Indiana.[8]

## CONCLUSION

The Court finds it does not have personal jurisdiction over the RV Factory or Donati because neither Defendant purposefully directed any activities to Idaho. The Court denies Defendants' Motion to Dismiss. The request to transfer the case to the Northern District of Indiana is granted.

---

[8] Because the Court finds it does not have jurisdiction over Defendants and the matter should be transferred in the interest of justice under § 1631, the Court does not reach the issue of transfer of venue under § 1406(a).

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Dkt. 15) is **DENIED IN PART and GRANTED IN PART.**

The Clerk of Court is directed to transfer this matter to the Northern District of Indiana.

DATED: May 10, 2017

Edward J. Lodge
United States District Judge